UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
STEVEN CRAIG,

                              Plaintiff,

            -against-

THE BANK OF NEW YORK MELLON
CORPORATION f/k/a THE BANK OF NEW YORK,

                              Defendants.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CV-4438 (SLT) (RML)

**TOWNES, United States District Judge:**

Plaintiff Steven Craig, proceeding *pro se,* brings this action against defendant Bank of

New York Mellon Corporation, formerly known as Bank of New York, seeking, *inter alia,* to

enjoin the foreclosure and sale of his residence, to rescind a "predatory loan agreement," and to

obtain compensatory damages of over $1 million and punitive damages of over $3 million.

Defendant now moves for judgment on the pleadings, principally alleging that plaintiff's

complaint does not meet the requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil

Procedure and that various causes of action alleged in the complaint are time-barred.  For the

reasons set forth below, this Court grants plaintiff leave to amend his complaint and defers

resolution of the statute of limitations arguments until after the amended pleading is filed.

## *BACKGROUND*

On July 28, 2010, plaintiff commenced this action in the United States District Court for

the Southern District of New York by filing a 24-page, typewritten complaint (the "Complaint").

The pleading appears to be based on a form complaint, since it is virtually identical to a

complaint filed in September 2010 in *Grandy* v. *BAC Home Loan Servicing, LP*, E.D.N.Y.

Docket No. 10-CV-4278 (SLT) and to complaints filed in other cases.  However, with the

following three exceptions, the form complaint has not been altered to allege facts specific to plaintiff's case.

First, the Complaint specifically alleges that plaintiff "entered into a consumer contract for the refinance of a primary residence located at 1327 Prospect Place, Brooklyn, New York . . ." (Complaint at 1), although it does not allege when plaintiff entered into that contract or with whom he contracted.  Second, the Complaint lists "the fees charged at settlement" (*id.* at 11-12) and alleges that plaintiff "sent a . . . qualified written request . . . via certified mail to the defendant" relating to these fees (*id.* at 12), but fails to provide the date of the settlement or the date of plaintiff's request.  Third, the pleading alleges that defendant did not respond to this request (*id.*) and lists closing documents which were allegedly not signed and dated (*id.* at 13).

All of the remaining allegations in the Complaint appear to have been copied directly from the form, without any effort to relate them to the facts of plaintiff's case.  The Complaint begins with a general description of mortgage industry practices alleged to be a "carefully crafted criminal connivance" (*id.* at 2).  After noting that "[i]t is not the intent of [plaintiff] to indict the entire industry" (*id.*), the Complaint specifically mentions financial institutions other than defendant before describing a hypothetical scheme that begins with an unspecified "Lender" securing a "large loan from a large bank" (*id.* at 3).

Although plaintiff specifically alleges the existence of a "consumer contract," pages 6 through 8 of the Complaint list various defenses to unspecified contractual claims.  For example, the Complaint – which consistently refers to "Defendants" notwithstanding the fact that there is only one defendant named in the caption and frequently refers to plaintiff as "Petitioner" despite the fact that he is identified as "Plaintiff" in the caption – states that "Defendants . . . have failed to produce said contract" and "claim agency to represent the principal in a contractual agreement

2

involving Petitioner" despite a lack of "any evidence of said agency other than a pronouncement that agency has been assigned by some person, the true identity and capacity of whom has not been established" (*id.* at 8). Since there is nothing in the Complaint to suggest that defendant has advanced claims based on the "consumer contract," it is unclear whether these allegations are even relevant to this action.

Pages 9 through 14 of the Complaint allege, among other things, that "Defendants, by and through Defendant's Agents, conspired with other Defendants, et al, toward a criminal conspiracy to defraud Petitioner" (*id.* at 9). The Complaint does not identify the "Defendants" or "Agents" or allege any specific actions in furtherance of the conspiracy, other than alleging that some unspecified "Agent practiced up-selling to Petitioner" (*id.*) and that some unspecified "Lender . . . conspired with [an] appraiser . . . for the purpose of inducing Petitioner to enter into [the loan]" (*id.* at 13) and then packaged the debt and lien arising from the loan in ways that arguably defrauded investors and the Internal Revenue Service (*id.* at 9, 11-12). It is unclear how defendant was involved in any of these actions or how the alleged conspiracy defrauded plaintiff.

Similarly, pages 15 through 18 allege that "Lenders" and "Defendants" disregarded sound underwriting practices, issuing low- or no-documentation loans and engaging in the practice of "risk layering." However, the Complaint does not allege that plaintiff was issued a low- or no-documentation loan, or that these underwriting practices damaged plaintiff. In addition, pages 15 through 17 do not allege specific acts on the part of defendant, alleging only:

> Petitioner is informed and believe [*sic*], and on that basis allege [*sic*], that Defendants, and each of them, engaged and/or actively participated in, authorized, ratified, or had knowledge of, all of the

3

business practices described above in paragraphs 30-42 of this
Complaint (id. at 18).[1]

The Complaint contains a section entitled "Causes of Action," which appears to list six

separate claims. Only one of these – entitled, "Cause of Action [for] Violation of Truth in

Lending Act – purports to raise a federal question. The remaining five cause of actions – entitled

"Breach of Fiduciary Duty," "Cause of Action – Negligence/ Negligence Per Se," "Agent:

Common Law Fraud," "Claim for Breach of the Implied Covenant of Good Faith and Fair

Dealing," and "Intentional Infliction of Emotional Distress" – purport to allege state-law or

common-law claims.

The first two of these five causes of action, however, principally allege violations of three

federal statutes: the Truth in Lending Act, 15 U.S.C. §1601, *et seq.* ("TILA"); the Real Estate

Settlement Procedures Act, 12 U.S.C. §2614, *et seq.* ("RESPA"); and the Home Ownership and

Equity Protection Act, 15 U.S.C. §1639 ("HOEPA"). The cause of action for "Breach of

Fiduciary Duty," which purports to be brought against "Defendants Agent, appraiser, trustee,

Lender, et al, and each of them" (Complaint at 19), states that the duties breached "included, but

were not limited to, ensuring their own and Petitioner's compliance with all applicable laws

governing the loan transaction in which they were involved, including but not limited to, TILA,

HOEPA, RESPA and the Regulations X and Z promulgated there under" (Complaint at 20

(emphasis omitted)). Similarly, the cause of action for "Negligence" alleges that "Defendants

owed a duty of care under TILA, HOEPA, RESPA and the Regulations X and Z promulgated

there under to, among other things, provide proper disclosures concerning the terms and

---

[1]The paragraphs of the Complaint are not numbered, but this Court notes that all of the
Complaint's allegations concerning underwriting standards are contained in the 12 paragraphs
immediately preceding this allegation.

4

conditions of the loans they marketed, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, and to avoid paying undue compensation such as 'yield spread premiums' to mortgage Agents or loan officers." (*Id.* (emphasis omitted)).

## *Defendant's Motion*

Defendant now moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Although Defendant's Memorandum of Law in Support of its Motion ("Defendant's Memo") raises eight points, three of which contain sub-points, defendant's argument can be grouped into two categories. First, defendant argues that the allegations in the Complaint fail to state a claim. In this connection, defendant argues (1) that the Complaint as a whole fails to satisfy the notice pleading requirements set forth in Rule 8(a) of Federal Rules of Civil Procedure and (2) that the allegation of fraud fails to satisfy the heightened pleading standard of Rule 9(b), before noting that there is no factual support for each of plaintiff's six causes of action.

Second, defendant argues that some of plaintiff's claims are time-barred. Specifically, defendant argues that plaintiff did not commence this action until almost three years after the expiration of the one-year statute of limitations applicable to RESPA claims, and almost one year after the expiration of the three-year statute of limitations applicable to TILA and HOEPA claims. Defendant also argues that plaintiff's claims for negligence and intentional infliction of emotional distress are barred by the statutes of limitations applicable to these state law actions.

These statute of limitations arguments are not based on information included in the Complaint. Rather, defendant has filed a declaration from one of its attorneys, Glenn B. Coleman, attaching various documents relating to these arguments. These documents include a note and mortgage which Mr. Coleman alleges, upon information and belief, relate to the loan

which is the subject of plaintiff's action (Declaration of Glenn B. Coleman ["Coleman Declaration"], Exs. C and D, respectively); two letters from plaintiff – one addressed to the Bank of America and one addressed to the Bank of New York – which bear the heading, "Qualified Written Request/ Rescission Notice" (*Id.*, Ex. N); and two letters responding to the letter plaintiff sent to the Bank of America (Coleman Declaration, Ex. O). The Coleman Declaration also includes copies of complaints filed in four other federal actions which closely resemble the Complaint herein (*Id.*, Exs. F, H, J, and L), and unpublished opinions disposing of those four complaints (*Id.*, Exs. G, I, K and M).

In response to defendant's motion, plaintiff has filed three documents: a "Response in Opposition to Defendant's Motion" ("Plaintiff's Memo"), a "Motion to Strike Defendant's Summary-Judgment Evidence," and a Petition for Pre-Litigation Discovery pursuant to Rule 26(d) of the Federal Rules of Civil Procedure. In Plaintiff's Memo and in the Motion to Strike, plaintiff urges this Court to disregard the exhibits attached to the Coleman Declaration, arguing that these should be considered only upon summary judgment and not upon a Rule 12 motion.

## DISCUSSION

### Standard of Review

In deciding a motion for judgment on the pleadings pursuant to Rule 12(c), courts apply the same standard that is used to decide a motion to dismiss under Rule 12(b)(6). *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all of the factual allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006). A court must then

6

determine whether a plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Because "a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (internal citations omitted), a court deciding such a motion "is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). However, in some circumstances, a court may consider documents other than the complaint. For example, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998)). In addition, a document which is not attached to, or incorporated by reference in, the complaint may be considered if the complaint "solely relies" on the document and it is "integral to the complaint." *Id.* (quoting *Cortec Indus.*, 949 F.2d at 47) (emphasis omitted). If "matters outside the pleading are presented to and not excluded by the court," a court should convert the motion to one for summary judgment and give "all parties . . . [a] reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

Typically, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid

7

claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v.*

*Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795

(2d Cir. 1999).

***Rules 8(a)***

Defendant's first group of arguments principally relies on the pleading standards sets

forth in Rules 8(a) and 9(b) of the Federal Rule of Civil Procedure.  Rule 8(a) provides:

> A pleading that states a claim for relief must contain:  (1) a short
> and plain statement of the grounds for the court's jurisdiction,
> unless the court already has jurisdiction and the claim needs no
> new jurisdictional support; (2) a short and plain statement of the
> claim showing that the pleader is entitled to relief; and (3) a
> demand for the relief sought, which may include relief in the
> alternative or different types of relief.

Under this Rule, the complaint "need only give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests." *Erickson*, 551 U.S. at 93.

While Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

—, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286

(1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555.  As the Second

Circuit has stated, *Twombly* "obliges a pleader to amplify a claim with some factual allegations

in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v.*

*Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis added).  If a party does not "nudge [his]

8

claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 569.

When a complaint fails to comply with the requirements of Rule 8(a), a district court has the power to dismiss the complaint or to strike such parts as are redundant or immaterial. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1998). However, even "if the court dismisses the complaint for failure to comply with Rule 8, it should generally give the plaintiff leave to amend. This is especially true when the complaint states a claim that is on its face nonfrivolous." *Simmons*, 49 F.3d at 86-87.

For the most part, the Complaint in this case fails to satisfy the notice pleading requirements of Rule 8(a). The Complaint offers labels, conclusions and naked assertions, but virtually no facts relating specifically to plaintiff or defendant. Although the Complaint alleges that plaintiff entered into some sort of "consumer contract for the refinance of [his] primary residence" (Complaint at 1), it provides no other information regarding the contract. The Complaint does not allege when the contract was made or even that defendant was a party to the contract. In addition, the Complaint vaguely alleges conspiracies between unspecified "Defendants," "Lenders" and "Agents," without providing any specific facts relating to plaintiff's case or any hint as to defendant's role.

One small portion of the pleading, however, makes specific factual allegations concerning plaintiff's case. The Complaint alleges that "Petitioner sent a . . . qualified written request . . . via certified mail to the defendant," that the "defendant failed to respond within 20 days that they received the QWR" and that the defendant did not "attempt to correct any of the issues stated in

the QWR within 60 days" (Complaint at 12). Plaintiffs specifically alleges that defendants

actions were in "direct violation of RESPA" (*id.*).

This portion of the Complaint is sufficient to allege a cause of action under 12 U.S.C.

§2605(e), which imposes a duty on the "servicer of a federally related mortgage loan" to respond

to a borrower's written request for certain information relating to the servicing of such loan. In

light of this nonfrivolous claim, this Court will not dismiss this action but will grant plaintiff

leave to filed an amended complaint. *See Simmons*, 49 F.3d at 86-87.

While plaintiff's amended complaint may allege causes of action other than the violation

of §2605(e), plaintiff is warned not to copy them indiscriminately from a form complaint. For

example, portions of the form plaintiff used in drafting the Complaint raise defenses to a

foreclosure action that is not before this Court. The Complaint alleges, among other things, that

"Defendants" lack standing because they do not have evidence of plaintiff's contractual

obligation and cannot "claim agency to represent the principal in a contractual agreement

involving Petitioner" (*id.* at 8). The Complaint also speculates that plaintiff's promissory note

may have been "converted to a security and sold into a special purpose vehicle," making the

trustee of that special purpose vehicle – not defendant – the real party in interest (*id.* at 9). As

plaintiff himself acknowledges, "Plaintiff[']s claims have NOTHING to do with a foreclosure

process that have [*sic*] happened in the State" (Plaintiff's Memo at ¶41). Accordingly, these

allegations should not be included in the amended complaint.

In addition, the amended complaint should not simply catalogue abusive mortgage

industry practices without specifically alleging that defendant perpetrated those abuses, that these

abuses affected plaintiff, and that these abuses gave rise to a valid claim for relief. The

Complaint alleges, among other things, that an "Agent practiced up-selling to Petitioner"

10

(Complaint at 9); that a "Lender . . . conspired with [an] appraiser" to inflate the value of financed properties (*id.* at 13); that "Defendants" issued low- and no-documentation loans and otherwise "relaxed, and often disregarded, traditional underwriting standards" (*id.* at 16); that the "Lender" conspired with "the trust Agent at closing" for the purpose of inducing "Petitioner to sign documents without allowing time for Petitioner to read and fully understand what was being signed" (*id.* at 13); and that "Lender" then profited by creating derivatives that succeeded when loans defaulted (*id.* at 10).   Since Plaintiff's Memo implies that defendant is only the "current servicer" of the loan (Plaintiff's Memo at ¶17), who may not have been involved with the loan at issue until sometime after the closing, it is unclear whether these allegations even relate to defendant.

The Complaint also fails to specify that plaintiff was the victim of some of these abuses. For example, plaintiff does not allege that an appraiser overestimated the value of his property or that he was not required to provide documentation.  Similarly, while the Complaint specifically alleges that the "Lender" defrauded persons who invested in the mortgage-backed derivatives, it does not allege that plaintiff was an investor.  Allegations that do not relate to plaintiff's case should not be included in the amended complaint.

### *Rule 9(b)*

In case plaintiff elects to amend the Complaint to allege common-law fraud, this Court will briefly address defendant's Rule 9(b) argument.  In contrast to the very liberal pleading requirements of Rule 8(a), Rule 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

11

It is well established that "in order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "Rule 9(b) applies to all common law fraud claims, including claims under state law." *Icebox–Scoops v. Finanz St. Honore, B. V.*, 676 F. Supp. 2d 100, 110 (E.D.N.Y.2009) (citing *Meisel v. Grunberg*, 651 F.Supp.2d 98, 107-08 (S.D.N.Y. 2009)).

In arguing that plaintiff has failed to satisfy the requirements of Rule 9(b), defendant refers solely to that portion of the Complaint which purports to advance a common-law fraud claim against an unspecified "Agent" (Complaint at 21). This portion of the Complaint alleges that the "Agent," acting "in concert and collusion with others named herein," made misrepresentations without a "reasonable ground for believing them to be true" for the purpose of inducing plaintiff to enter into the loan agreement (*id.*). These allegations, however, do not specify the misrepresentations, identify who made the misrepresentations, state where and when the misrepresentations were made, or explain why the misrepresentations were fraudulent. Accordingly, these allegations do not meet the requirements of Rule 9(b). *See Lerner*, 459 F.3d at 290.

In responding to defendant's argument, plaintiff contends that "[a] fraud by omission claim does not need to meet the requirements of Rule 9(b) because it is based on the absence of representations, rather than on representations that were made and can be detailed in a pleading" (Plaintiff's Memo at ¶35). However, the common-law fraud claim set forth in the Complaint and described above alleges fraudulent misrepresentations, not omissions. Rule 9(b) applies to

12

fraudulent misrepresentation claims and "requires that the plaintiff '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)). Even if the alleged fraud consisted of omissions, making plaintiff "unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *Cohain v. Klimley*, Nos. 08 Civ. 5047(PGG), 09 Civ. 4527(PGG), 09 Civ. 10584(PGG), 2010 WL 3701362, at *20 (S.D.N.Y. Sept. 20, 2010) (quoting *Odyssey Re Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F.Supp.2d 282, 293 (S.D.N.Y.2000)).

***Defendant's Remaining Arguments***

This Court declines to address defendants remaining arguments at this time. All of defendant's statute of limitations arguments rely on facts not alleged, and documents not specifically referred to, in the Complaint. For example, defendant's counsel asserts, on information and belief, that a note and mortgage attached to his declaration relate to the loan which is the subject of plaintiff's action (*see* Coleman Declaration, ¶¶4-5, Exs. C and D); and suggests that a letter from plaintiff to the Bank of New York, labeled "Qualified Written Request/ Rescission Notice," is the qualified written request referred to on page 12 of the Complaint (*Id.*, Ex. N). Defendant's counsel's assumption may ultimately prove correct, but these documents are not described in the Complaint with the specificity required to permit that conclusion at this juncture.

13

Moreover, because none of the documents attached to the Coleman Declaration are clearly incorporated by reference in the Complaint, this Court could not consider these documents without converting defendant's motion for judgment on the pleadings into a motion for summary judgment and giving all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Since this Court has already determined that plaintiff should be permitted to amend his complaint, it is more efficient to await the amended complaint and to permit defendant to renew whatever remaining arguments may still be relevant.[2]

### CONCLUSION

For the reasons set forth above, plaintiff shall amend his complaint in accordance with the Memorandum and Order and file the amended complaint with this Court within thirty (30) days of the date of this Memorandum and Order. That submission shall be entitled, "Amended Complaint," and shall bear docket number 10-CV-4438 (SLT) (RML). If plaintiff fails to file his amended complaint within the time allowed, this Court may enter a judgment dismissing this action without further notice to the parties. If plaintiff timely files an amended complaint, defendant may seek permission to file a motion to dismiss that pleading, raising any ground not decided herein or any new grounds that may be appropriate.

**SO ORDERED**.

SANDRA L. TOWNES
United States District Judge

Dated: March 22, 2012
Brooklyn, New York

---

[2]In light of this holding, there is no need to adjudicate plaintiff's Motion to Strike.

14