UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
STEVEN CRAIG,

                          Plaintiff,

-against-

THE BANK OF NEW YORK MELLON
CORPORATION, f/k/a THE BANK OF NEW YORK,

                          Defendant.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**

10-CV-4438 (SLT) (RML)

**TOWNES, United States District Judge:**

Plaintiff Steven Craig ("Plaintiff"), proceeding *pro se*, brings this action to recover damages for violations of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601 *et seq*.; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. Defendant Bank of New York Mellon Corporation, formerly known as Bank of New York ("Defendant"), now moves to dismiss pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment. For the reasons stated below, Defendant's motion is granted, but Plaintiff is granted leave to amend his FDCPA claims.

*BACKGROUND*

On July 28, 2010, Plaintiff commenced this action in the United States District Court for the Southern District of New York by filing a 24-page, typewritten complaint. That pleading appeared to be based on a form complaint, since it was virtually identical to a complaint filed in September 2010 in *Grandy v. BAC Home Loan Servicing, LP*, E.D.N.Y. Docket No. 10–CV–4278 (SLT), and to complaints filed in other cases. With a few exceptions, the original complaint did not allege facts specific to Plaintiff's case.

After the case was transferred to this district, Defendant moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Although Defendant raised eight points, three of which contained sub-points, those arguments fit into two categories. First, Defendant argued that the allegations in the complaint failed to state a claim, asserting (1) that the complaint as a whole failed to satisfy the notice pleading requirements set forth in Rule 8(a) of Federal Rules of Civil Procedure, (2) that the allegations of fraud failed to satisfy the heightened pleading standard of Rule 9(b), and (3) that there was no factual support for each of Plaintiff's six causes of action. Second, Defendant claimed that some of Plaintiff's claims were time-barred, arguing, among other things, that Plaintiff did not commence this action until almost three years after the expiration of the one-year statute of limitations applicable to RESPA claims, and almost one year after the expiration of the three-year statute of limitations applicable to TILA claims.

In a memorandum and order dated March 22, 2012, and filed March 23, 2012 (the "Prior M&O"), this Court directed Plaintiff to file an amended complaint. *See Craig v. Bank of New York Mellon Corp.*, No. 10-CV-4438 (SLT)(RML), 2012 WL 1004870 (E.D.N.Y. Mar. 23, 2012). Since familiarity with the Prior M&O is assumed, a lengthy discussion of the Prior M&O is unnecessary. For purposes of this memorandum and order, it suffices to note that this Court held that, with the exception of "one small portion" of the complaint which sufficiently alleged a cause of action under 12 U.S.C. § 2605(e), the complaint failed to comply with the notice pleading requirements of Rule 8(a). *Id.*, 2012 WL 1004870, at *5-6. Accordingly, this Court did not reach the statute of limitations arguments, but directed Plaintiff to amend his complaint.

***The Amended Complaint***

On April 25, 2012, Plaintiff filed a six-page amended complaint (the "Complaint"). Although the factual allegations contained in that pleading are not entirely clear, the Complaint implies that, at some point prior to April 14, 2008, Plaintiff entered into a mortgage agreement with a lender. The Complaint does not name the lender or specifically identify the mortgage agreement, but contains several references to "Countrywide Bank" (Complaint, ¶¶ 16-17).

On April 14, 2008, Mortgage Electronic Registration Systems ("MERS"), acting as "Nominee for Countrywide," assigned the mortgage to Defendant (*id.*, ¶16). The document assigning the mortgage to Defendant was signed by Ely Harless and Micall Bachman, both of whom were identified in the document as "Vice President" (*id.*). Although the document did not specify the entity with which the signatories were affiliated, Plaintiff performed an internet search and found references to Mr. Harless as both "Vice President of Mortgage Electronic Registration Systems" and "Vice President of Country Wide" (*id.*, ¶17). In addition, Plaintiff came across a case in which Judge Schack of the Supreme Court of the State of New York, Kings County, dismissed a foreclosure action brought by Defendant in its capacity as Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2006-OC1 Mortgage Pass-Through Certificates, Series 2006-OC1, on the ground that Mr. Harless lacked authority to assign the mortgages (*id.*).

Plaintiff never received notice of the transfer or assignment of the mortgage (*id.*, ¶18). However, on or about April 18, 2008, Defendant, acting in its capacity as Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2006-OA14 Mortgage Pass-Through Certificates, Series 2006-OA14, filed a foreclosure action against Plaintiff in the Supreme Court of the State of New York, Kings County (*id.*, ¶¶ 11, 16). According to Plaintiff, the pleading in

that foreclosure action alleged that Defendant and/or CWALT, Inc. Alternative Loan Trust 2006-OA14 Mortgage Pass-Through Certificates, Series 2006-OA14, either owned Plaintiff's Note and Mortgage or "had acquired the right to enforce the Note and Mortgage from the Party entitled to enforce the Note" (*id.*, ¶¶ 12-13). The Complaint does not allege whether that foreclosure action is still pending or describe the outcome of that action.

On or about May 17, 2010, Plaintiff sent a letter to Defendant via certified mail addressed to the Plano, Texas, office listed in the assignment of mortgage (*id.*, ¶¶ 14, 19).[1] The letter "requested validation of [Plaintiff's] alleged debt," and demanded certain documents and the answer to some 200 questions regarding the servicing of Plaintiff's mortgage (*id.*). Defendant never responded to the letter.

Although the Complaint alleges that Defendant has "committed fraud in order to wrongfully foreclose" (*id.*, ¶ 8), the Complaint does not seek to stay or forestall the foreclosure proceedings. Rather, each of the Complaint's three causes of action seeks to recover damages. The first cause of action alleges that Defendant violated a provision of RESPA, codified at 12 U.S.C. § 2605(e), which imposes a duty on loan servicers to respond to borrowers' inquiries. The Complaint alleges (1) that "Defendant is a servicer of a federally related mortgage loan within the meaning of . . . § 2605" (Complaint, ¶ 22); (2) that Plaintiff's "written requests for information about his account and correction of Defendants' [*sic*] numerous errors" constituted "qualified written requests," as defined in § 2605(e)(1)(B) (Complaint, ¶ 23); and (3) that

---

[1] Although paragraph 14 of the Complaint alleges that "[o]n or about 5/17/2010 Plaintiff . . . submitted a Qualified Written Request via Certified Mail," paragraph 19 of the Complaint alleges that Plaintiff sent a "RESPA letter" via certified mail to Defendant on May 17, 2007. However, paragraph 19 also alleges that Plaintiff used the address listed in the assignment of mortgage. Since the Complaint alleges that the mortgage was assigned to Defendant on April 18, 2008, this Court assumes that a single letter was sent to Defendant via certified mail in May 2010, and that the reference to 2007 in paragraph 19 is a typographical error.

Defendant "deliberately failed to respond in a proper and timely way to Plaintiff's 'qualified written requests,'" in violation of § 2605(e) (Complaint, ¶ 24).  In connection with this first cause of action, the Complaint demands "a proper accounting and application of his mortgage payments," as well as "actual, statutory, treble and/or punitive damages" and attorney's fees and costs (*id.*, p. 4).

The second cause of action alleges that Defendant violated TILA by failing to notify Plaintiff that his mortgage had been assigned to Defendant.  That cause of action consists of two paragraphs, followed by an *ad damnum* clause.  The first paragraph re-alleges prior paragraphs of the Complaint (*id.*, ¶ 25).  The second quotes 15 U.S.C. § 1641(g)(1) in its entirely (Complaint,

¶ 26).  The *ad damnum* clause requests the damages available under 15 U.S.C. § 1640(a), as well as attorney's fees and costs (Complaint, ¶ 27).

The third cause of action alleges that Defendant violated various provisions of the FDCPA.  The first three paragraphs of this cause of action re-allege prior paragraphs of the Complaint (Complaint, ¶ 27), allege that Plaintiff is a "consumer" within the meaning of the FDCPA (*id.*, ¶ 28 (citing 15 U.S.C. § 1692a(3)), and allege that Defendant is a "debt collector" within the meaning of the FDCPA (*id.*, ¶ 29 (citing 15 U.S.C. § 1692a(6)).  The fourth and final paragraph of the third cause of action lists 10 provisions of the FDCPA which were allegedly violated by Defendant (*id.*, ¶ 30).  These four paragraphs are followed by an *ad damnum* clause which requests the damages available under 15 U.S.C. § 1692k, as well as attorney's fees and costs.

Although the fourth paragraph lists the provisions of the FDCPA which Defendant allegedly violated, it does not allege the specific acts or omissions which resulted in these

violations.  Rather, the Complaint contains conclusory allegations which track the language of the statutory provision allegedly violated.  For example, in alleging that Defendant violated 15 U.S.C. § 1692d, which prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," the Complaint alleges that Defendant "violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person" (Complaint,

¶ 30(a)).  Similarly, the Complaint alleges that Defendant violated 15 U.S.C. § 1692e(2)—a provision which prohibits, among other things, "[t]he false representation of . . . the character, amount, or legal status of any debt"—by "falsely representing the character, amount, or legal status of any debt" (Complaint, ¶ 30(b)).

### *Defendant's Motion*

Defendant now moves to dismiss these three causes of action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  Defendant's moving papers consist of at least eight documents, including a notice of motion, a memorandum of law in support of the motion ("Defendant's Memo"), a statement of undisputed material facts pursuant to Local Civil Rule 56.1, notices pursuant to Local Civil Rules 12.1 and 56.2, two affidavits and one declaration.  The declaration (hereafter, the "Coleman Declaration") is executed by Defendant's counsel, Glenn B. Coleman, and attaches documents filed in the course of this action, along with the complaint filed by Defendant in its state foreclosure action.  The affidavits are executed by Ruth Joseph, an employee of Bank of America, N.A. ("BANA"), a successor by

merger to BAC Home Loans Servicing, LP ("BAC"), and by Glenn Mitchell, a Vice President in Defendant's Corporate Trust Department.

Defendant's Memo contains four points. The first of these sets forth the legal standards applicable to motions pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure. The remaining three points each relate to one of the three causes of action alleged in the Complaint.

Point II, which relates to the first cause of action, contains three arguments for dismissing Plaintiff's RESPA claim. First, after noting that 12 U.S.C. § 2605(e) imposes a duty on loan servicers, Defendant argues that it was only an assignee of the mortgage, not the loan servicer. In support of this argument, Defendant relies on statements in the affidavits signed by Glenn Mitchell and Ruth Joseph which assert that at all times relevant to this action, BANA— not Defendant—was the servicer of the loan at issue in this case (Mitchell Affidavit, ¶ 5; Joseph Affidavit, ¶¶ 6, 10).

The second argument raised in Point II asserts that Plaintiff's RESPA claim should be dismissed because "Plaintiff's inquiry to [Defendant] did not meet the requirements for a [qualified written request]" (Defendant's Memo at 8) (alterations added). Citing to 12 U.S.C. §2605(e)(1)(B), which sets forth the statutory definition of a "qualified written request," Defendant argues that Plaintiff's letter did not constitute a qualified written request because it failed to "identify any reasons for his belief that his account was in error, did not provide sufficient detail regarding most of the information sought, and requested numerous documents and substantial information unrelated to the servicing of his loan." (Defendant's Memo at 8). In addition, Defendant argues that while it did not respond to Plaintiff's May 17, 2010, letter, BANA responded to an identical letter from Plaintiff, dated April 19, 2010. In support of this

argument, Defendant cites to two exhibits to the Joseph Affidavit: a letter from Plaintiff to BANA, dated April 19, 2010 (Joseph Affidavit, Ex. A) and a letter dated July 14, 2010, which was sent to Plaintiff by a law firm purporting to represent BAC, a subsidiary of BANA, and which purports to respond to Plaintiff's April 19, 2010, letter (Joseph Affidavit, Ex. B).

The third argument raised in Point II asserts that Plaintiff's first cause of action fails "to allege any damages that were proximately caused by [Defendant's] alleged violation of RESPA" (Defendant's Memo at 9) (alterations added). Defendant notes that the Complaint contains only a "conclusory statement that [Plaintiff] is entitled to damages" (*id.* (brackets added)), and argues that this conclusory statement is insufficient to state a claim.

Like Point II, Point III of Defendant's Memo advances three arguments. Two of these relate to the Complaint's second cause of action, which alleges that Defendant violated a provision of TILA, codified as 15 U.S.C. § 1641(g), by failing to notify Plaintiff that his mortgage had been assigned to Defendant. The first argument raised in Point III asserts that Defendant was not required to provide notice of the assignment to Plaintiff because § 1641(g) did not become effective until May 19, 2009—more than a year after Plaintiff's mortgage was assigned to Defendant. The third argument asserts that Plaintiff's TILA claim is time-barred by the one-year statute of limitations set forth in 15 U.S.C. § 1640(e).[2]

---

[2]The second argument raised in Point III does not actually relate to the TILA claim but to the suggestion that the mortgage was never properly assigned to Defendant. Preliminarily, Defendant argues that Plaintiff has no standing to challenge this assignment because he was not a party to it. Defendant also rebuts Plaintiff's allegations regarding Mr. Harless, asserting (1) "that Mr. Harless did not sign the assignment on behalf of MERS, but merely witnessed the signature of the individual who did," and (2) that the state-court case which held that Mr. Harless lacked authority to assign mortgages is inapposite (Defendant's Memo at 11).

Point IV of Defendant's Memo advances two arguments relating to the Complaint's third cause of action. First, Point IV notes that the third cause of action "merely recites the statutory elements without supporting factual allegations of any kind" (*id.*, at 12). Defendant argues that these conclusory allegations violate the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Second, Point IV notes that, to the extent Plaintiff's FDCPA claims arise from the 2008 assignment of Plaintiff's mortgage or the Defendant's commencement of foreclosure proceedings, those claims are barred by the one-year statute of limitations applicable to FDCPA claims.

### Plaintiff's Opposition Papers

In opposition to Defendant's motion, Plaintiff has filed a 16-page brief entitled, "Response to Defendant's Motion to Dismiss" ("Plaintiff's Response"). Attached to Plaintiff's Response are four exhibits: the summons and complaint in the state-court foreclosure action; a Pooling and Servicing Agreement dated as of September 1, 2006 (the "PSA"), through which Plaintiff's mortgage was assigned to Defendant; the Assignment of Mortgage dated April 14, 2008; and a law review article which purports to deconstruct securitized trusts. Two of these documents were provided to the Court as exhibits to Defendants' moving papers. The summons and complaint was submitted as Exhibit B to the Coleman Declaration and the Assignment of Mortgage constituted Exhibit A to the Mitchell Affidavit.

Plaintiff's Response does not specifically address any of the arguments set forth in Point II of Defendant's Memo. Plaintiff does not dispute Defendant's evidence that BANA, not Defendant, is the servicer of Plaintiff's loan, or argue that Plaintiff's written inquiry to Defendant constituted a qualified written request. In addition, Plaintiff does not identify any damages that were proximately caused by Defendant's alleged violation of RESPA, or controvert

Defendant's claim that BANA and BAC timely responded to a written inquiry which was identical to the one sent to Defendant.

Plaintiff's Response also fails to controvert the first of the three arguments contained in Point III of Defendant's Memo, in that it does not contest Defendant's claim that 15 U.S.C. §1641(g) did not become effective until May 19, 2009. In addition, Plaintiff's Response does not contest Defendant's claim that a one-year statute of limitations applies to the TILA claim. However, Plaintiff's Response alleges that the one-year statute of limitations should be equitably tolled because "Defendants [*sic*] actively concealed the complete truth from Plaintiff with the intent of defrauding Plaintiff" (Plaintiff's Response, p. 13).[3]

With respect to Point IV, Plaintiff's Response does not contest Defendant's argument that Plaintiff's conclusory FDCPA allegations fail to satisfy the notice pleading requirements of Rule 8(a). Rather, Plaintiff's Response attempts to explain the factual basis for some of Plaintiff's FDCPA claims. First, Plaintiff characterizes his May 2010 letter to Defendant as a debt validation letter, as well as a qualified written request, and alleges that Defendant's failure to respond to that letter violated 15 U.S.C. 1692g. Second, implying that Defendant had no right to collect money owed under the note or to foreclose on the mortgage, Plaintiff claims that Defendant violated 15 U.S.C. § 1692(e)(2) and (f) by misrepresenting the character, amount, and legal status of the alleged debt and violated 15 U.S.C. § 1692(e)(5) by threatening to take action against Plaintiff that could not legally be taken.

Plaintiff's Response also addresses Defendant's statute of limitations argument by arguing that equitable tolling should apply. Essentially, Plaintiff asserts that he "had no notice of

---

[3] Because Plaintiff's Response is not paginated, this Court will use the page numbers assigned to that document by this Court's Electronic Case Filing system in order to denote particular pages in that document.

wrong doing until the improprieties of the real estate market were finally made public in the popular media" (Plaintiff's Response, p. 14). Plaintiff argues that the doctrine of equitable estoppel should apply in this case to preclude Defendant from arguing that Plaintiff's FDCPA claims are time-barred.

### Defendant's Reply

In its Reply Memorandum in Further Support of its Motion to Dismiss the Amended Complaint (the "Reply Memo"), Defendant advances several arguments for dismissing the FDCPA claims suggested in Plaintiff's Response. With respect to Plaintiff's claim that Defendant never responded to its debt validation letter, Defendant argues that BANA responded to an identical letter from the Plaintiff, dated April 19, 2010. Defendant also argues for the first time that it is not a "debt collector" for purposes of the FDCPA, citing cases for the propositions that "mortgage companies are not debt collectors" and that "an assignee of a debt that is not in default at the time of assignment is not a debt collector" (Reply Memo at 6). In addition, Defendant cites to portions of the PSA in arguing that it has the right to foreclose on Plaintiff's mortgage, and argues (1) that "noncompliance with the terms of a PSA would not invalidate the assignment" to Defendant and (2) that "any FDCPA claim arising from an alleged violation of the PSA is time-barred under the applicable one-year statute of limitations" (*id*. at 8).

### DISCUSSION

### Standards of Review

Although Defendant's Notice of Motion states that Defendant is moving "pursuant to Fed. R. Civ. P. 12(b)(1) and (6) . . . or alternatively, pursuant to Fed. R. Civ. P. 56," Point I of Defendant's Memo discusses only the standards of review applicable to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and a motion for summary judgment pursuant to

11

Rule 56. Defendant's Memo does not clearly articulate the statutory basis for the arguments set forth in Points II through IV, but none of these arguments appear to be brought pursuant to Rule 12(b)(1). Nonetheless, this Court will discuss the standards applicable to motions pursuant to all three rules.

A claim is "properly dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)). When "the case is at the pleading stage and no evidentiary hearings have been held . . . [a court] must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal citations and quotations omitted; brackets and ellipses added). However, "in adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coalition, v. Rowland*, 494 F.3d 71, 77, n. 4 (2d Cir. 2007).

In contrast, when considering a Rule 12(b)(6) motion, materials outside the four corners of the complaint are "generally not considered . . . unless the court treats [the motion] as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03–CV–6233 (JBW), 2004 WL 1533831, at *2 (E.D.N.Y. July 9, 2004). Aside from the allegations in the complaint, which are assumed to be true, a court can consider only "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or

. . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Even if the complaint does not, the court must grant leave to amend the complaint if a liberal reading of the pleading "gives any indication that a valid claim might be stated." *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

Because Plaintiff is proceeding *pro se*, his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal citations and quotations omitted).

In a motion pursuant to Rule 56, summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir.1999) (internal quotation marks omitted).

The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)*; see Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World*, 922 F.2d at 121 (internal quotations and citations omitted). Moreover, the disputed facts must be material to the issue in the case, in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "No genuine issue exists if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotation marks omitted) (alteration in original).

### Plaintiff's RESPA Claim

In his first cause of action, Plaintiff alleges that Defendant violated 12 U.S.C. § 2605(e) by failing to "respond in a proper and timely way to Plaintiff's 'qualified written requests' for

information about, and corrections to, his mortgage account . . . ."  Complaint, ¶ 24.  Section

2605(e) sets two deadlines with respect to "qualified written requests," both of which were

shortened by amendments to the statute which became effective sometime after July 21, 2010.

*See* Mortgage Reform and Anti-Predatory Lending Act, Pub.L. 111-203, § 1400(c), 124 Stat.

1376, 2136 (2010).  The first deadline is set forth in section 2605(e)(1), which, prior to the 2010

amendments, provided:

> If any servicer of a federally related mortgage loan receives a
> qualified written request from the borrower (or an agent of the
> borrower) for information relating to the servicing of such loan, the
> servicer shall provide a written response acknowledging receipt of
> the correspondence within 20 days (excluding legal
> public holidays, Saturdays, and Sundays) unless the action requested is
> taken within such period.

The 2010 amendments shortened this deadline from 20 days to 5 days.  *See* Mortgage Reform

and Anti-Predatory Lending Act, Pub.L. 111-203, § 1463(c)(1), 124 Stat. 1376, 2184 (2010).

The second deadline is set forth in section 2605(e)(2), which requires a "servicer" to take

certain actions with respect to a borrower's qualified written request.  These actions include

providing the borrower with certain written explanations or clarifications, including, "to the

extent applicable, a statement of the reasons for which the servicer believes the account of the

borrower is correct as determined by the servicer," "information requested by the borrower or an

explanation of why the information requested is unavailable or cannot be obtained by the

servicer . . . ."  12 U.S.C. §§ 2605(e)(2)(B)(i) and 2605(e)(2)(C)(i).  Prior to the 2010

amendments, the servicer was required to take these actions "[n]ot later than 60 days (excluding

legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any

qualified written request . . ." 12 U.S.C. §§ 2605(e)(2).  The 2010 amendments shortened the

deadline from 60 to 30 days.  *See* Mortgage Reform and Anti-Predatory Lending Act, Pub.L.

111-203, § 1463(c)(2), 124 Stat. 1376, 2184 (2010).

Under the terms of section 2605, only the "servicer of a federally related mortgage loan"

who receives a "qualified written request" is responsible for meeting these deadlines and

providing the statutorily required explanations and clarifications.  For purposes of section 2605,

"[t]he term 'servicer' means the person responsible for servicing of a loan (including the person

who makes or holds a loan if such person also services the loan)."  12 U.S.C. § 2605(i)(2).  For

purposes of subsection (e) of section 2605, a "qualified written request" is defined as "a written

correspondence, other than notice on a payment coupon or other payment medium supplied by

the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account

of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the

extent applicable, that the account is in error or provides sufficient detail to the servicer

regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

In its first argument relating to this first cause of action,  Defendant moves for summary

judgment on the ground that Defendant is not a "servicer" as defined by the statute.  In support

of this argument, Defendant has introduced affidavits from Ruth Joseph, a BANA employee, and

Glenn Mitchell, a Vice President in Defendant's Corporate Trust Department, to establish that

BANA— not Defendant—was the servicer of Plaintiff's loan.  *See* Joseph Affidavit, ¶¶ 6, 10;

Mitchell Affidavit, ¶ 5.  Although Plaintiff's Complaint alleges that "Defendant is a servicer of a

federally related mortgage loan within the meaning of . . . § 2605," Complaint, ¶ 22, Plaintiff has

not adduced any evidence to substantiate this claim and to controvert the evidence provided by

Defendant.  Accordingly, Defendant's motion for summary judgment with respect to the first

cause of action is granted.

This Court need not address Defendant's other arguments relating to Plaintiff's RESPA claims. This Court notes, however, that documents provided by Defendant in support of its motion establish that Plaintiff's rights under § 2605(e) were not violated. Although Plaintiff may not have received a response to the "Qualified Written Request/Rescission Notice" which Plaintiff sent to Defendant in May 2010, he received a timely responses to an almost identical document which Plaintiff sent to BANA on April 19, 2010. First, on May 17, 2010—20 business days after April 19, 2010—BANA sent Plaintiff a written response acknowledging that Plaintiff's correspondence was received on April 21, 2010, and promising to respond in a timely manner. *See* Joseph Affidavit, Ex. B. Then, on July 14, 2010—less than 60 business days after BANA's receipt of Plaintiff's correspondence—an attorney representing BAC sent Plaintiff a letter responding to Plaintiff's inquiries. *See id.*, Ex. C. In light of this evidence, none of which is controverted by Plaintiff, this Court finds that Plaintiff's RESPA claim is entirely without merit.

### *Plaintiff's TILA Claim*

Plaintiff's second cause of action alleges that Defendant violated 15 U.S.C. § 1641(g) by failing to provide notice of the assignment of his mortgage. Section 1641(g) provides, in pertinent part:

> [N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . .

However, section 1641 was not amended to include subsection (g) until May 2009. *See* Helping Families Save Their Homes Act of 2009, Pub.L. 111-22, Div. A, § 404(a), 123 Stat 1632, 1658 (2009).

In moving to dismiss Plaintiff's second cause of action, Defendant principally argues that Plaintiff's mortgage was assigned to Plaintiff prior to the enactment of the notice requirement set forth in subsection (g). Plaintiff's Response does not contest this point. Indeed, Plaintiff's own pleading alleges that Plaintiff's mortgage was assigned to Defendant on April 14, 2008. Complaint, ¶ 16. Moreover, Plaintiff does not argue that § 1641(g) is retroactive, and this Court is unaware of any authority to that effect. To the contrary, the handful of district courts to have considered the issue appear to have uniformly held that § 1641(g) is *not* retroactive. *See*, *e.g.*, *Ballard v. Bank of America, N.A.*, No. SACV 12–1698–JLS (JPRx), 2014 WL 503143, at *3 (C.D. Cal. Jan. 28, 2014) (citing *Jara v. Aurora Loan Serv*., 852 F. Supp. 2d 1204, 1209 n. 6 (N.D. Cal. 2012); *Connell v. CitiMortgage, Inc*., No. 11-0443-WS-C, 2012 WL 5511087, at *1 n. 3 (S.D. Ala. Nov. 13, 2012) (citing cases); *Foley v. Wells Fargo Bank, N.A.*, No. 11-62314-CIV, 2012 WL 4829124, at *2 (S.D. Fla. Sept. 28, 2012); *Bradford v. HSBC Mortgage Corp.*, 829 F. Supp. 2d 340, 353 (E.D.Va. 2011).

Since § 1641(g) was not in effect at the time Plaintiff's mortgage was assigned to Defendant and is not retroactive, Plaintiff's second cause of action is dismissed. Accordingly, there is no need to consider the other arguments raised in Point III of Defendant's Memo.

***Plaintiff's FDCPA Claim***

Plaintiff's third cause of action alleges that Defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6) and has violated ten provisions of the FDCPA. Point IV of Defendant's Memo seeks to dismiss this cause of action on two grounds. First, Defendant argues that the third cause of action violates the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure because it "merely recites the statutory elements without supporting factual allegations of any kind." Defendant's Memo at 12. Second, Defendant argues that if

Plaintiff's FDCPA claims arise from the 2008 assignment of Plaintiff's mortgage or the Defendant's commencement of foreclosure proceedings, those claims are barred by the one-year statute of limitations applicable to FDCPA claims.

Rule 8(a) of the Federal Rules of Civil Procedure provides:

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Under this Rule, the complaint "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

While Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). As the Second Circuit has stated, *Twombly* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007).

Plaintiff's third cause of action does not satisfy the requirements of Rule 8(a). That cause of action does not allege any facts whatsoever, but merely tracks the statutory language. Since it

does not give Defendant "fair notice" of the grounds for Plaintiff's FDCPA claims, the third cause of action fails to comply with the notice pleading requirements of Rule 8(a). *See Erickson*, 551 U.S. at 93.

Although the third cause of action is deficient, this Court must still determine whether to grant Plaintiff leave to amend this claim. To be sure, a district court has the power to dismiss a complaint which fails to comply with the requirements of Rule 8(a). *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1998). Thus, even "if the court dismisses the complaint for failure to comply with Rule 8, it should generally give the plaintiff leave to amend." *Simmons*, 49 F.3d at 86–87.

Neither Defendant nor Plaintiff has expressly addressed the question of whether Plaintiff should be granted leave to amend his FDCPA claim. The second argument set forth in Point IV of Defendant's Memo—which speculates that Plaintiff's FDCPA claims arise from the 2008 assignment of Plaintiff's mortgage or the Defendant's commencement of foreclosure proceedings, and asserts that those claims are barred by the one-year statute of limitations applicable to FDCPA claims—implies that it would be futile to grant leave to amend. However, Plaintiff's Response suggests that Plaintiff's FDCPA claims are not based on these 2008 events. For example, Plaintiff's Response characterizes Plaintiff's May 2010 letter to Defendant as a debt validation letter, and alleges that Defendant's failure to respond to that letter violated 15 U.S.C. 1692g. Plaintiff's Response also implies that Defendant had no right to collect money owed under the note or to foreclose on the mortgage, and that Defendant violated 15 U.S.C. §1692(e)(2) and (f) by misrepresenting the character, amount, and legal status of the alleged debt

and violated 15 U.S.C. § 1692(e)(5) by threatening to take action against Plaintiff that could not legally be taken.

While Defendant's Reply Memo contains several additional arguments relating to the viability of the FDCPA claims suggested by Plaintiff's Response, this Court declines to address them at this juncture. First, Plaintiff's Response does not fully articulate Plaintiff's FDCPA claims. Second, some of the arguments advanced by Defendant in response to the perceived FDCPA claims are complex and are, themselves, not fully articulated. Third, because these arguments were first raised in Defendant's Reply Memo, Plaintiff has not had an opportunity to respond to them or to present evidence in opposition to them.

In light of the foregoing, and in light of Plaintiff's *pro se* status, this Court will grant Plaintiff leave to amend his FDCPA claims. As discussed above, Plaintiff's second amended complaint must allege facts in support of these FDCPA claims and explain how the Defendant's alleged acts or omissions violated specific provisions of the FDCPA. Once Plaintiff has articulated his FDCPA claims, Defendant may file a pre-motion conference request, seeking permission to move to dismiss or, in the alternative, move for summary judgment with respect to these FDCPA claims.

### CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss or, in the alternative, for summary judgment is granted. However, this Court grants Plaintiff leave to amend his third cause of action, alleging violations of the Fair Debt Collection Practices Act, with thirty (30) days of the date of this Memorandum and Order. The pleading containing this amended cause of action shall be captioned, "Second Amended Complaint," and list the same parties and docket number as the Complaint. Plaintiff is reminded that the second amended complaint will

completely replace the prior pleadings, and must allege specific facts to support Plaintiff's FDCPA claims.

If Plaintiff fails to file a second amended complaint that complies with these requirements within thirty (30) days of the date of this Memorandum and Order, this action will be dismissed without further notice. If Plaintiff timely files a second amended complaint, Defendant shall have twenty days from the filing of that pleading in which to answer or to submit a pre-motion conference request seeking permission to move to dismiss or, in the alternative, move for summary judgment with respect to the second amended complaint. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**


_____/s/_____
SANDRA L. TOWNES
United States District Judge

Dated: March 31, 2014
        Brooklyn, New York